S. Fenton SMITH, Individually, and as
Administratrix of the Estate of Lloyd E. Smith,
Deceased v. George HANKINS and Milton MOORE

5-5610                                    467 S. W. 2d 159

Opinion delivered May 24, 1971

*N. J. Henley* and *Terral, Rawlings, Matthews &
Purtle,* for appellant.

*Wright, Lindsey & Jennings,* for appellees.

J. Fred Jones, Justice. This is an appeal by Mrs.
S. Fenton Smith, individually, and as administratrix of
the estate of her deceased husband Lloyd E. Smith,
from a directed verdict in favor of George Hankins and
Milton Moore in the Searcy County Circuit Court where-
in Mrs. Smith had filed a wrongful death action against
Hankins and Moore. We conclude that the trial court
did not err in directing a verdict for the appellees-de-
fendants.

The collision out of which this litigation arose
occurred on Cantrell Road in Little Rock on June 12,
1970. The decedent, Lloyd Smith, was riding in the
rear seat of an automobile being driven by his sister-
in-law, Mrs. Joe Mays, in a westerly direction on Can-
trell Road, and Milton Moore, an employee of George
Hankins, was driving a loaded milk truck in an easterly
direction on the same road. As the two vehicles ap-

proached each other at a curve, the Mays' vehicle, in which Smith was riding, skidded out of control and across the highway into the path of the oncoming truck driven by Moore.

The only evidence offered at the trial as to how the accident occurred, consisted of testimony given by and photographs made under the directions of the investigating police officer, S. R. McKinney, and the deposition of the milk truck driver, Milton Moore. The photographs offered in evidence clearly reveal very heavy damage to the entire front and left side of the Mays vehicle, with considerably less, but extensive, damage to the left front of the milk truck. The photographs as well as the testimony reveal that where the impact occurred, Cantrell Road is a four lane thoroughfare with a double stripe painted between the east and westbound traffic lanes and with a single white stripe separating the two westbound traffic lanes and also a single white stripe separating the two eastbound traffic lanes. The curve in which the collision occurred is upgrade and bears to the north for the westbound traffic and is downgrade for eastbound traffic.

Police Officer S. R. McKinney testified that the collision occurred about 6:35 a.m. and that the weather was cloudy and damp. He testified that the collision occurred on the center line between the two eastbound traffic lanes, and that there was no evidence that the eastbound truck was ever on the wrong side of the four lane highway. Officer McKinney testified that when he reached the scene of the collision, he found debris on the pavement on the center line between the eastbound lanes and about nine feet from the east curb on Cantrell Road. He says the milk truck was sitting at an angle across the division line of the eastbound lanes with its right front wheel within about five feet of the curb. He says the entire highway at this point is about 45 feet wide. Officer McKinney testified that the pavement at the time was wet and that he found no skid marks behind either vehicle. He testified that the blacktop pavement at this point is very slick when wet.

Mr. Milton Moore testified by deposition that he was driving his employer's milk truck generally east down Cantrell hill in Little Rock; that it had been raining and the pavement was wet. He testified that he was driving 20 to 25 miles an hour and that he first observed the Mays vehicle when it was 30 or 40 yards from him. He testified that when he first saw the Mays vehicle it was on its proper side of the four lane highway, but that in attempting to negotiate the curve the automobile did not respond; that he saw the automobile "turn up sideways and then it started sliding, started slipping sideways across the road." He testified that he was driving under 20 miles an hour when the collision occurred. Mr. Moore then testified as follows:

"Q. You applied your brakes, I assume?

A. I already had my foot on the brake; and was holding the truck back with the brakes.

Q. Did you skid this full distance until you all collided?

A. No, I don't know whether I did or not, really.

Q. Traveling at 25 miles an hour, how long would it take you to stop that truck?

A. It would depend on the condition of the road.

Q. On that particular date, were you not able to stop it within 120 feet?

A. No, I wasn't.

Q. You were not able to stop it within 120 feet?

A. No, I wasn't completely stopped.

Q. As I understand it, you were not able to stop this truck within 120 feet on this particular date because of the wet streets, is that correct?

A. Yes.

Q. If you said at that time you saw the Mays vehicle when it was 50 yards away and it started to cross the road in front of you, you wouldn't dispute that now, would you?

A. No.

Q. As you are coming down Cantrell hill there, there are quite a few speed limit signs and curve signs there, aren't there?

A. Yes, there are.

Q. As a matter of fact within 20 or 30 yards of where this accident happened there is a big curve sign with a speed limit of 25 miles an hour, is there not?

A. Yes, there is."

Mr. Moore testified that the truck as well as the automobile sustained heavy damage. He says that the Mays vehicle was demolished; that both doors of his truck were jammed; that the windshield was broken and that he had to climb through the broken windshield in getting out of the truck. He says that he had approximately 5,000 pounds of milk on his truck; that after he saw the automobile cross the center line and go into a skid, he tried to completely stop his truck but was unable to do so. He says that he had his foot on the brake and had been holding the truck back with the brake; that he thinks he applied more pressure when he saw the automobile skid towards him, but in the short time involved he is not sure whether he applied more pressure on the brakes or not.

On redirect examination Mr. Moore testified that the Mays vehicle was traveling probably 50 miles an hour when he first observed it and that he was probably 30 yards from it when it started skidding across to his side of the highway. He says that when he saw the automobile coming to his side of the highway, he immediately applied his brakes and started cutting to his right. He

testified that he is not sure whether the automobile turned sideways or not because it happened so fast, but that he knew it was skidding. He testified that his truck was at a slight angle to his right when the collision occurred and that the automobile slid straight into his truck.

The other evidence submitted in the case had to do with the elements of damage and is not germane to the issue on this appeal. In granting the motion for a directed verdict, the court first took the motion under advisement and his reasoning is set out as follows:

"THE COURT: The Court understands there is no attempt to prove, as far as the Plaintiff is concerned, who was the more negligent. The question is, is there any negligence, and of course, the question the Court has more trouble with than that is probable cause. Assuming that the actions of the defendant could be interpreted by the jury as being some negligence, was it the proximate cause. * * *"

We agree with the trial court that if the jury could have found any negligence at all on the part of Moore in the operation of his truck, the record would still be void of any evidence of causal connection between any negligence that could have been attributed to Moore and the collision resulting in the death of Mr. Smith.

The facts in the case at bar are very similar to those encountered in the case of *Steinberg* v. *Ray,* 236 Ark. 569, 367 S. W. 2d 445. In that case the McCarty and Steinberg automobiles collided on Highway 67 with the Steinberg automobile traveling north and the McCarty automobile traveling south. McCarty's wife was killed in the collision and both McCarty and his wife's estate sued and obtained judgments against Steinberg. Steinberg, as did Moore in the case at bar, testified that he first noticed the McCarty automobile in its proper or southbound lane as it was meeting him and that McCarty pulled from his southbound lane across and into the northbound lane in front of him, whereupon he, Steinberg, applied his brakes and swerved to his right in an

unsuccessful effort to avoid the collision. According to the physical facts the Steinberg vehicle left 90 feet of skid marks leading up the point of impact, and both vehicles came to rest in the northbound lane. The trial court overruled Steinberg's motion for a directed verdict and upon appeal by Steinberg to this court, in reversing the judgment, we said:

> "According to the evidence in this case there is no proof of facts, nor can any reasonable inferences be drawn from the evidence, that establishes any substantial evidence that the appellant, Steinberg, was negligent or that any negligence on his part was the proximate cause of this collision resulting in injuries to the appellees."

The judgment is affirmed.